# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| GALLATIN WILDLIFE ASSOCIATION, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DALE OLSON, *et al.*, <br><br> Defendants. | CV-23-12-BU-BMM <br><br><br> **ORDER** |

## INTRODUCTION

Gallatin Wildlife Association and Cottonwood Environmental Law Center (together, "Plaintiffs") sued the United States Forest Service ("the USFS") and Dale Olson in his official capacity as Madison District Ranger of the Beaverhead Deerlodge National Forest (together, "Defendants") for declaratory and injunctive relief based on alleged USFS violations of administrative procedure in the management of the Beverhead Deerlodge National Forest. (Doc. 18.) Plaintiffs specifically challenge USFS's environmental analyses of seven domestic grazing allotments in the Gravelly Range in southwestern Montana. (Doc. 18.)

1

## BACKGROUND

This is the second case brought by Gallatin Wildlife Association and its allies against the USFS challenging management of these seven grazing allotments. *Gallatin Wildlife Ass'n, v. United States Forest Serv.*, No. CV-15-27-BU-BMM, 2016 WL 3282047, (D. Mont. June 14, 2016), aff'd, 848 F. App'x 298 (9th Cir. 2021) ("*Gallatin I*"). This Court found the USFS's NEPA analysis to be insufficient in *Gallatin I* and ordered that the USFS "shall conduct a review of the five issues raised by Gallatin, and any other pertinent new information, to determine whether any, or all, of this new information warrants supplementation of the original EIS prepared for the [allotment management plans] [for the seven challenged allotments in in the Gravelly Mountains on the Beaverhead-Deerlodge National Forest]." *Gallatin I* at 14.

Pursuant this Court's order, on December 26, 2017, the USFS issued a "Final Review of New Information Pertinent To Domestic Sheep Allotment Management Plans In the Gravelly Mountains On the Beaverhead-Deerlodge National Forest," ("Final Review"). (Doc. 20-1.) The Final Review considered, among other matters, the five *Gallatin I* issues. *Id*. It concluded that NEPA did not require supplemental analyses because the issues considered showed no significant effects to bighorn sheep. *Id*. The USFS also published a "Final Supplemental Environmental Impact Statement for the Beaverhead-Deerlodge National Forest

Land and Resource Management Plan to Comply with the District of Montana Court Order (MOU – Bighorn Sheep)" on January 27, 2018. (Doc. 20-2.)

Defendants seek dismissal with prejudice of Plaintiffs' claims. (Doc. 19.) This Court held a hearing on the motion to dismiss on August 31, 2023. (Doc. 26.)

## LEGAL STANDARDS

A court must dismiss a complaint if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). A court must consider all allegations of material fact as true and construed in a light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim remains plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id.*

A court must dismiss the claim if it determines that it lacks subject-matter jurisdiction over a claim. Fed. R. Civ. P. 12 (h)(3); Fed. R. Civ. P. 12 (b)(1). A court may look to extrinsic evidence outside the pleadings when evaluating whether to dismiss a complaint for lack of subject matter jurisdiction. *Ass'n of Am.*

*Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). The burden of proving jurisdiction rests on the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir.1997)). Claim preclusion applies "whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Id*.

## DISCUSSION

Plaintiffs allege in Claim One that the rationale contained in the USFS's Final Review for not preparing a supplemental NEPA analysis violates NEPA. (Doc. 18 at 22.) Plaintiffs allege that the Final Review overlooked significant new information, about grizzly bears and guard dogs. (Doc. 18 at 22-28.) Plaintiffs contend that this new information required a supplemental NEPA analysis for the allotments. (Id.) Claim preclusion bars this Court's consideration of Plaintiffs' first claim.

Plaintiffs' Claim One shares an identity with claims raised in previous litigation. To determine whether identity of claims exists, a court applies several criteria: "(1) whether rights or interests established in the prior judgment would be

destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir. 1982) (quoting *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980)).

Claim One shares a nucleus of facts with claims that were or could have been raised in *Gallatin I*. Plaintiffs now challenge the same USFS analyses and authorizations, i.e., NEPA analyses completed by 2000, as they challenged in *Gallatin I*. *See* (Doc. 18 at 8.) Moreover, in *Gallatin I*, the plaintiffs initially asserted arguments about grizzly bear and guard dog information by pointing to a largely identical set of facts as are alleged here. *See Gallatin I*, 2:15-cv-00027-BMM, Doc. 73. Plaintiffs abandoned those lines of argument in *Gallatin I*. *See* 2:15-cv-00027-BMM, Docs. 73 and 148. Plaintiffs cannot now resurrect those abandoned assertions in a subsequent action.

The Court entered a final judgement on the merits in *Gallatin I*. The plaintiffs in *Gallatin I* abandoned their claims about grizzly bear deaths and guard dogs burdening recreation before the Court's entry of summary judgment. Summary judgment in *Gallatin I* represents a final judgment on the merits and satisfies the second requirement to find claim preclusion. *See e.g., Praeger v.*

5

*Computer Assocs. Int'l, Inc.*, 88 F. App'x 186, 188 (9th Cir. 2004). The Ninth Circuit noted in *Praeger* that "the prior action concluded in a final judgment on the merits." *Id.* The final judgment on the merits was evidenced by the fact that the "district court granted the [party's] motion for summary judgment in the prior suit, and judgment was entered[.]" *Id*. The Court similarly entered judgment in *Gallatin I*.

Finally, Plaintiffs here stand in privity with the plaintiffs in *Gallatin I*. The requirement that parties stand in privity is satisfied when "members of a class not present as parties to the litigation […] are in fact adequately represented by parties who are present." *Hansberry v. Lee*, 311 U.S. 32, 43 (1940). "For two parties to have privity, they must be 'so identified in interest ... that [they] represent[ ] precisely the same right' on the relevant issues." *Grondal v. United States*, 21 F.4th 1140, 1163 (9th Cir. 2021), cert. denied sub nom. *Mill Bay Members Ass'n, Inc. v. United States*, 143 S. Ct. 108, 214 L. Ed. 2d 25 (2022) (citing *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)). "A prior proceeding, to have binding effect on absent parties, [must] at least have to be 'so devised and applied as to insure [sic] that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.'" *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 801 (1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 43 (1940)).

Plaintiff Gallatin Wildlife Association served as a plaintiff in *Gallatin I*. Plaintiff Cottonwood Environmental Law Center ("Cottonwood") adequately was represented in *Gallatin I*. Indeed, the alleged injury in *Gallatin I* proves substantively identical to the alleged injury here. In *Gallatin I*, the plaintiffs alleged:

> Members and staff of the plaintiff organizations use and enjoy, on a continuing and ongoing basis, the lands of the Beaverhead Deerlodge National Forest, including the domestic sheep grazing allotments that are authorized in the Gravelly [Range] by the U.S. Forest Service. Plaintiffs' members hike, fish, hunt, camp, photograph, and engage in other recreational activities in the domestic sheep allotments at issue in this case. The Plaintiffs' members derive aesthetic, recreational, inspirational, educational, and other benefits from their activities in these allotments on a regular and continuing basis and intend to do so frequently in the future. The above-described aesthetic, recreational, inspirational, educational, and other interests of the Plaintiffs have been, are being, and, unless the relief prayed for is granted, will continue to be adversely and irreparably injured if domestic sheep grazing is allowed to proceed in the Gravelly Mountains. These are actual, concrete injuries to Plaintiffs, caused by Defendants' failure to comply with NEPA, NFMA, and the APA. The above-named injuries would be redressed by the relief requested in this Complaint.

*Gallatin I*, 2:15-cv-00027-BMM, Doc. 73. These allegations are virtually indistinguishable from those contained in Plaintiffs' Amended Complaint here:

> Members and staff of the plaintiff organizations use and enjoy, on a continuing and ongoing basis, the lands of the Beaverhead-Deerlodge National Forest, including the domestic sheep grazing allotments that are authorized in the Gravelly [Range] by the U.S. Forest Service. Plaintiffs' members' hike, hunt, camp, photograph, mountain bike, meditate and engage in other spiritual and recreational activities in the domestic sheep allotments at issue in this case. The Plaintiffs' members derive aesthetic, recreational, inspirational, educational, and other

7

> benefits from their activities in these allotments on a regular and continuing basis and intend to do so frequently in the future, including during the summer of 2023 and 2024. The above-described interests of the Plaintiffs have been, are being, and, unless the relief prayed for is granted, will continue to be adversely and irreparably injured if domestic sheep grazing is allowed to proceed in the Gravelly mountains. These are actual, concrete injuries to Plaintiffs, caused by Defendants' failure to comply with NEPA and the APA. The above-named injuries would be redressed by the relief requested in this Complaint.

Doc. 18. The mere inclusion of a new plaintiff organization cannot transform an old claim into a new one. The plaintiffs in *Gallatin I* and Plaintiffs here are "so identified in interest . . . that [they] represent[ ] precisely the same right on the relevant issues." *Grondal* at 1163 (internal quotations omitted).

Defendants argue two alternative bases for dismissing Plaintiffs' Claim One. Defendants first argue that abandoned claims about grizzly bears and guard dogs actually were litigated in *Gallatin I* so issue preclusion applies. Defendants contend that Plaintiffs fail to plead necessary elements of a claim for NEPA supplementation. (Doc. 20.) Claim preclusion bars this claim. The Court need not reach the question of issue preclusion or the question of failure to state a claim with regard to Claim 1.

Plaintiff's Claim Two alleges that USFS's "undue delay" in completing a supplemental NEPA analysis violates NEPA, the APA, and the Mandamus Act. (Doc. 18 at 28 and 30). A court reviewing a challenge to agency action under the Administrative Procedure Act "shall compel agency action unlawfully withheld or

unreasonably delayed." 5 U.S.C. § 706(1). "A claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Plaintiffs make no showing that USFS has failed to fulfill a requirement that the agency take a discrete action. USFS has included a discrete agency action, namely the completion of a single EIS, on several Schedules of Proposed Actions. *See* (Doc. 18 at 10 and 30.) Plaintiffs cannot proceed simply because they allege that USFS repeatedly has gone back on its word with regard to scheduling the draft EIS. USFS is not required to take a discrete action, such as the completion of a new NEPA additional analysis for all seven allotments, when it already fulfilled its duties to conduct NEPA analyses when it conducted the initial analyses for the individual allotments in question.

USFS further represents that it is in the process of preparing a new NEPA analysis for the allotments with a draft EIS estimated to be available for public comment in December 2024. Plaintiffs and the public are not left without recourse. Plaintiffs can submit comments on the new draft EIS when made public and can challenge the new analysis when it becomes final. This Court lacks subject matter jurisdiction over Plaintiffs' Claim Two because Defendants are not required to undertake agency action beyond that which already has been taken. *Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1113 (9th Cir. 2005) (affirming

9

dismissal for lack of subject matter jurisdiction where plaintiff did not allege a discrete agency action that USFS failed to take).

Plaintiffs argue, in Claim Three, that USFS's Supplemental EIS re Memoranda of Understanding with grazing permitees represents an arbitrary and capricious act in violation of NEPA. (Doc. 18 at 30.) The outline of Plaintiffs' allegation is that the Forest Service's January 2018 Supplemental Environmental Impact Statement was arbitrary and capricious in violation of NEPA. (Doc. 18 at 30-32). Thus, to survive a challenge under Rule 12(b)(6), Plaintiffs' Amended Complaint must contain "sufficient factual matter" to state a "plausible" claim that the Forest Service's January 2018 SEIS was arbitrary and capricious in violation of NEPA. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It does not.

An agency acts arbitrarily and capriciously if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). NEPA requires that an agency, in preparing a supplemental environmental impact statement, conduct a "'a reasonably thorough discussion of the significant aspects of the probable environmental consequences.'" *Idaho Conservation League v. Mumma*,

956 F.2d 1508, 1519 (9th Cir. 1992) (quoting *Oregon Env't Council v. Kunzman*, 817 F.2d 484, 492 (9th Cir. 1987)). Rephrased, under NEPA and the APA, an agency is required to take a "hard look" at environmental consequences. *Kleppe v. Sierra Club*, 427 U.S. 390, 410 at n.21 (1976). NEPA does not require that an agency "engage in the most exhaustive environmental analysis theoretically possible." *Nw. Env't Advocs. v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1139 (9th Cir. 2006).

Stripping Plaintiffs' Amended Complaint of mere conclusory assertions not entitled to the assumption of truth (*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), the remaining factual assertions appear sparse and fail to support adequately Plaintiffs' claim. Plaintiffs allege, for example, that, contrary to the Forest Service's finding in the January 2018 SEIS, "bighorn sheep and permitted sheep have been found in close proximity since bighorn sheep were reintroduced." (Doc. 18 at 31.) Plaintiffs contend that the USFS failed to consider information that was before it and thus USFS's decision was arbitrary and capricious. (Doc. 18 at 32.)

Plaintiffs make factual pleadings regarding three alleged circumstances. Plaintiffs first allege that "a permitee on the West Fork allotment[] reported bighorn sheep on the lower end of the Standard Cr. Road to the Forest Service." (Doc. 18 at 31.) This factual allegation proves insufficient to state a plausible claim regarding the SEIS because the West Fork allotment is not one of the seven allotments challenged in this suit. Second, Plaintiffs allege that "the Forest Service knew that

11

in the Snowcrest Mountains[] several bighorn sheep have been observed near the domestic sheep trailing route." (Doc. 18 at 32.) This allegation proves fatally vague; in essence it represents a mere recitation of the elements of a claim. Third, Plaintiffs allege that a U.S. Bureau of Land Management employee reported "a dead Bighorn [sic] ewe on Black Butte Mountain adjacent to a domestic sheep allotment" to Montana state wildlife authorities. (Doc. 18 at 32.) Without any more precision—such as how close would be "adjacent"—or allegations as to the significance of such a sighting, this again is too threadbare to survive Rule 12(b)(6) scrutiny. Plaintiffs' Claim Three fails to state a claim for relieve because it lacks sufficient factual allegations to surpass mere possibility and enter the realm of a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**. The Clerk of Court will enter Judgment accordingly and close this case.

Dated this 19$^h$ day of October, 2023.

_____
Brian Morris, Chief District Judge
United States District Court